**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

YOGENDRA RAWAL,

                         Plaintiff,               **MEMORANDUM AND ORDER**

        v.                                18-cv-03231 (ST)

ESTATE OF SHASHIDHAR DAVE and
ENGINEERING MAINTENANCE
PRODUCTS, INC. d/b/a HIPPO INDUSTRIES,

                         Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Yogendra Rawal ("Plaintiff") originally brought this action against the Estate of

Shashidhar Dave (the "Estate") and Engineering Maintenance Products, Inc. ("Engineering MP")

(together, "Defendants") in the Supreme Court of the State of New York, County of Nassau.  On

June 1, 2018, Defendants removed this action to the Eastern District of New York.  Now before

the Court is Defendants' Motion for Summary Judgment on Plaintiff's claims for breach of

contract, unjust enrichment, and quantum meruit.  Also pending is Plaintiff's Motion to Amend.

For the below reasons, Defendant' Motion for Summary Judgment is GRANTED and Plaintiff's

Motion to Amend is DENIED.

**I.**    **BACKGROUND**

      **a.**  **Factual Background**

The relevant factual background, as described in the Complaint and the parties' Rule 56.1

statements, is as follows.  Facts will be discussed in greater depth in the Discussion Section.  The

Court notes where facts are in dispute.

Plaintiff and Shashidhar Dave ("Decedent") were brothers-in-law. *See* Rosenfeld Decl., Ex. 1 ("Compl.") ¶ 9, Dkt. No. 59-1. Decedent died in April 2018. Defs.' Statement Undisputed Material Facts ("Defs.' 56.1") ¶ 38; Pl.'s Resp. Defs.' 56.1 & Counterstatement Material Facts ("Pl.'s 56.1") ¶ 38.

In 1977, in Kenya, Plaintiff founded a business called Economic Maintenance Products, Inc. ("EMP-Kenya"). *Id.* ¶ 6. In 1983, Plaintiff and Decedent entered an agreement (the "50-50 Agreement") pursuant to which each would own half of a business that was to operate in the United States, also under the name Economic Maintenance Products ("EMP-NY"). *See* Compl. ¶¶ 8-9; Defs.' 56.1 ¶ 1; Pl.'s 56.1 ¶ 1. In 1985, Plaintiff and Decedent orally agreed to modify their interests in the business (the "49-51 Agreement") (with the 50-50 Agreement, the "Agreements"), so Plaintiff would own 49 percent and Decedent would own 51 percent of EMP-NY. Defs.' 56.1 ¶ 2; Pl.'s 56.1 ¶ 2. Under the 49-51 Agreement, Decedent would serve as the managing partner and Plaintiff would be a silent partner. *Id.* It is disputed whether the 49-51 Agreement is a separate agreement from the 50-50 Agreement; Plaintiff contends they constitute a single, modified agreement while Defendants assert the Agreements are separate and that the 49-51 Agreement replaced the 50-50 Agreement. Defs.' 56.1 ¶¶ 1-2; Pl.'s 56.1 ¶¶ 1-2. Decedent incorporated Engineering MP, a defendant in this action, in 1988. *See* Defs.' 56.1 ¶ 36; Pl.'s 56.1 ¶¶ 35-36. It is in dispute whether EMP-NY and Engineering MP are distinct entities; Plaintiff asserts that Engineering MP and EMP-NY are the same entity while Defendants claim they are separate from one another. *See* Defs.' 56.1 ¶ 36; Pl.'s 56.1 ¶¶ 35-36.

Modern Maintenance Products ("MMP") was a product supplier based in the United Kingdom. Compl. ¶ 7. Don Mackenzie ("Mackenzie") worked for MMP. *See* Pl.'s 56.1 ¶ 14.

MMP supplied EMP-Kenya, EMP-NY, and Engineering MP. *See id.* ¶¶ 7, 11; Defs.' 56.1 ¶ 5; Pl.'s 56.1 ¶ 5.

In 1985, Plaintiff requested Decedent buy out Plaintiff's share of the business. Defs.' 56.1 ¶ 7; Pl.'s 56.1 ¶ 7. In 1993, Plaintiff again requested Decedent buy out Plaintiff's share of the business. Defs.' 56.1 ¶ 9; Pl.'s 56.1 ¶ 9.

### b. Procedural History

Plaintiff commenced this action against Defendants on May 17, 2018 in the Supreme Court of the State of New York, County of Nassau. *See generally* Compl. Defendants removed the action to the Eastern District of New York on June 1, 2018. *See generally* Notice Removal, Dkt. No. 1. The Complaint sought the following: a declaratory judgment that Plaintiff is 49% owner of Engineering MP; an accounting and valuation of Engineering MP; damages for breach of contract; damages for breach of the implied covenant of good faith and fair dealing; damages for unjust enrichment; damages for fraud; damages in quantum meruit. *See* Compl.

Earlier in this litigation, the Honorable Joseph F. Bianco, then presiding, granted in part Defendants' Motion to Dismiss. Order, Dkt. No. 19; Mot. Dismiss Bench Ruling Tr., Dkt. No 20. The Order dismissed Plaintiff's claims for a declaratory judgment, for an accounting, for breach of the implied covenant of good faith and fair dealing, and for fraud. *Id.* The Order also dismissed Plaintiff's claim for breach of contract, as it applied to Engineering MP. *Id.* Defendants' instant Motion seeks summary judgment on Plaintiff's remaining claims for breach of contract, unjust enrichment, and quantum meruit. *See* Notice Mot. Summ. J., Dkt. No. 55; Mem. Supp. Mot. Summ. J. ("Mot."), Dkt. No. 56. Defendants argue that all of Plaintiff's remaining claims are time-barred and are barred by the statute of frauds, that the equitable claims are barred by the doctrine of laches, that no admissible evidence supports the remaining claims,

and that, should this matter proceed to trial, the Court should preclude any witnesses not identified in the parties' initial disclosures from testifying. *See* Mot. The Motion for Summary Judgment has been fully briefed. *See generally* Mem. Opp'n Mot. Summ. J. ("Opp."), Dkt. No. 54; Reply Mem. Supp. Mot. Summ. J. ("Reply"), Dkt. No. 60.

Separately before the Court is Plaintiff's Motion to Amend, which seeks to add a fraud claim. *See generally* Notice Mot. Am., Dkt. No. 30; Mem. Supp. Mot. Am. ("Mot. Am."), Dkt. No. 30-3. The Motion to Amend has been fully briefed. *See generally* Mem. Opp. Mot. Am. ("Opp. Am."), Dkt. No. 37-1; Reply Supp. Mot. Am. ("Reply Am."), Dkt. No. 39.

## II. LEGAL STANDARDS

### a. Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In determining whether a genuine dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). "If there is evidence in the record from which an inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Holt v. KMI-Cont'l*, 95 F.3d 123, 129 (2d Cir. 1996). Nonetheless, a "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as mere "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir.

4

2010) (internal quotation marks and citation omitted). "The moving party bears the initial burden of establishing that there are no genuine issues of material fact[;] once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations omitted).

### b. Leave to Amend

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a "party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). When a party cannot amend its pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011); *Amaya v. Roadhouse Brick Oven Pizza, Inc.,* 285 F.R.D. 251, 253 (E.D.N.Y. 2012) ("A court should freely give leave [to amend] when justice so requires and such leave is in the court's discretion.") (internal quotation marks and citations omitted). Thus, "Federal Rule of Civil Procedure 15(a) dictates that motions to amend complaints be liberally granted absent a good reason to the contrary . . . ." *Assam v. Deer Park Spring Water, Inc.,* 163 F.R.D. 400, 404 (E.D.N.Y. 1995).

"[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-01 (2d Cir. 2007). "The party opposing amendment

bears the burden of demonstrating good reason for denial." *Debrosse v. City of New York*, 13 CV 3822 (AMD) (CLP), 2016 WL 3647589, at *5 (E.D.N.Y. May 25, 2016) (citing *Speedfit, LLC v. Woodway USA, Inc.*, 2015 WL 6143697, at *3 (E.D.N.Y. Oct. 19, 2015)), *adopted by*, 2016 WL 3647590 (E.D.N.Y. June 30, 2016). An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6). *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

"In determining whether to grant leave to amend, the Court must accept the moving party's non-conclusory factual pleadings and draw all reasonable inferences in that party's favor, 'to determine whether the allegations plausibly give rise to an entitlement to relief.'" *Heinz-Wright v. City of New York*, 15 Civ. 3269 RRM VMS, 2016 WL 3627323, at *4 (E.D.N.Y. June 3, 2016) (quoting *Panther Partners*, 681 F.3d at 119), *adopted by*, 2016 WL 3620759 (E.D.N.Y. June 29, 2016); *see also Konrad v. Epley*, No. 12-CV-4021 (JFP)(ETB), 2013 WL 6200009, at *20 (E.D.N.Y. July 31, 2013), *adopted by*, 2013 WL 6200009 (E.D.N.Y. Nov. 25, 2013). Whether to allow a party to amend its complaint is left to the discretion of the Court. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

## III.    DISCUSSION

### a.  Defendants' Motion for Summary Judgment

Without determining the validity of the Agreements, the record demonstrates that Plaintiff's breach of contract, unjust enrichment, and quantum meruit claims are time-barred.

### i.  Breach of Contract Claim

The Complaint alleges that Decedent "breached his agreements with Plaintiff that Plaintiff was at first a 50% owner, and then a 49% owner of EMP by freezing [Plaintiff] out of

the company and failing to justly compensate [Plaintiff]." Compl. ¶¶ 33.[1]  In New York, a

breach of contract claim is subject to a six-year statute of limitations.  N.Y. C.P.L.R. 213(2).  A

breach of contract cause of action accrues, and the statute of limitations begins to run, at the time

of the breach.  *Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993).

　　　　Defendants argue that "the breach of contract claim accrued in 1985, or in 1993 at the

very latest."  Mot. at 9.[2]  In support, Defendants' Motion and Reply cite the record.  Importantly,

Defendants cite a portion of Plaintiff's deposition, in which Plaintiff indicates Decedent has

locked Plaintiff out of the business since 1986.  Rawal Dep. at 114:12-115:10.  Further,

Decedent did not follow up with Plaintiff to provide a formalized version of the 49-51

Agreement, as they agreed he would during the April 1985 meeting at which the 49-51

Agreement was made.  *See id.* at 69:17-70:5, 155:22-156:18, 158:3-160:9.  After hearing nothing

from Decedent, Plaintiff hired an attorney to contact Decedent.  *Id.* at 71:19-72:4, 159:22-160:2.

Decedent did not respond to this 1985 letter from Plaintiff's counsel.  *Id.* at 71:19-72:16.

Defendants also refer to a May 22, 1985 letter, from Mackenzie to Decedent, that states, "it has

come as a considerable shock to [Plaintiff] to learn that his supposed partnership with you in

New York does not exist."  Rawal Decl., Ex. R, Dkt. No. 54-21.  Discussing this letter during his

deposition, Plaintiff indicates that he learned in 1985 that the partnership to which the letter

alludes, EMP-NY, did not exist.  Rawal Dep. at 309:24-310:7.

---

[1] In his Opposition, Plaintiff concedes that Decedent "was never under any contractual obligation
to buy out Plaintiff" and explains that Decedent's failure to give a distribution was "not a breach of his
agreement to be Plaintiff's partner."  Opp. at 10-11.

[2] In a February 4, 1993 letter, Plaintiff requested Decedent purchase Plaintiff's interest in EMP-
NY.  *See* Dave Decl., Ex. 1, Dkt. No. 58-1.  Decedent did not respond.  Rawal Dep. at 274:14-275:21.
The record suggests that Decedent continued to fail to pay Plaintiff around this time.  *See* Rawal Dep. at
160:19-161:4.  It is in this context that Defendants reference the 1993 letter to support their untimeliness
argument.  *See* Mot. at 9.  However, as mentioned, Plaintiff's Opposition indicates that Decedent was not
contractually obligated to buy out Plaintiff's share or to make distributions.  *See* Opp. at 10-11.
Nonetheless, as will be discussed, the record shows that Decedent breached the Agreements in the 1980s.

Despite Plaintiff's own testimony, the Opposition argues that Decedent did not breach the Agreements. *See* Opp. at 10 (Decedent "never once denied that Plaintiff had . . . an ownership interest, or that he would not be entitled to an ownership interest"). However, the Opposition does not relinquish the breach of contract claim. Rather, Plaintiff contends that his claim for breach accrued only "after [Decedent's] death," when the Estate "failed to recognize Plaintiff's ownership interest in the business." *Id.* Finally, Plaintiff avers that Decedent's "failure to provide an accounting or to give a distribution were breaches of his fiduciary duty . . . but was [*sic*] not a breach [of] his agreement to be Plaintiff's partner." *Id.* at 11. Should the Court consider these alleged failures "sufficient to start the statute of limitations on [Plaintiff's] claim of breach of the agreement to be partners," Plaintiff argues that the continuing wrong doctrine applies and preserves the timeliness of his claim. *Id.*[3] As discussed below, the Court rejects these arguments, none of which create a genuine issue of material fact such that Defendants' Motion for Summary Judgment, as it applies to the breach of contract claim, should be denied.

### 1. Plaintiff Does Not Show Decedent Did Not Breach

Plaintiff asserts that Decedent "never once denied that Plaintiff had . . . an ownership interest" in the United States business. *Id.* In support of his argument, Plaintiff cites his own

---

[3] In addition to these arguments, in a footnote, Plaintiff states, "to the extent Defendants prevail on their argument that their fraudulent creation of a corporation ended Plaintiff's partnership interest, that breach occurred in 1988, but was hidden from Plaintiff until they provided corporate documents in support of their motion to dismiss this action." *Id.* at 11 n.2. Plaintiff proceeds to argue that "Defendants should be equitably estopped from asserting the statute of limitations for that claim." *Id.* The Court notes that Defendants do not appear to reference the 1988 incorporation of Engineering MP in support of their argument that Plaintiff's breach of contract claim is untimely. *See* Mot. at 8-9. Further, a "plaintiff asserting equitable estoppel must demonstrate reasonable reliance on the defendant's misrepresentations. It is . . . fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit. Mere failure to disclose wrongdoing is not sufficient." *Mohamed v. Donald J. Nolan, Ltd.*, 967 F. Supp. 2d 647, 655 (E.D.N.Y. 2013) (internal quotation marks, citations, brackets omitted). Plaintiff has not shown that Defendants actively concealed the existence of Engineering MP from Plaintiff. Rather, the fact that Plaintiff named Engineering MP as a defendant in this action suggests that Plaintiff knew Engineering MP existed at some point before the Motion to Dismiss phase of this case. *See* Rawal Decl. ¶ 39.

Declaration. *See id.* (citing Rawal Decl. ¶¶ 34-35). The Declaration, dated October 2, 2020, claims that Decedent did not deny that Decedent and Plaintiff were partners, and that Decedent "repeatedly confirmed" they were partners. Rawal Decl. ¶¶ 34-35. However, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous testimony." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) (quoting *Hayes v. N.Y.C. Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)); *see also Fed. Deposit Ins. Co. v. Murex LLC*, 2020 WL 6646159, at *10 (S.D.N.Y. Nov. 12, 2020) (sham affidavit rule applies to declarations). Accordingly, Plaintiff's declaration does not undermine his prior sworn testimony, from June 5, 2019. *See* Rawal Dep. at 1.[4]

Relatedly, Plaintiff's Rule 56.1 Statement disputes whether Decedent locked Plaintiff out. *See* Pl.'s 56.1 ¶ 8. Here, too, Plaintiff cites the Rawal Declaration. *See id.* (citing Rawal Decl. ¶ 27, Dkt. No. 54-3). The cited portion of the Rawal Declaration does not state Decedent did not lock out Plaintiff; instead, it reiterates the terms of the 49-51 Agreement, by which Plaintiff was made a silent partner and Decedent a managing partner. *See* Rawal Decl. ¶ 27. Plaintiff does not

---

[4] Likewise unavailing are the Certifications that Plaintiff submits. For example, the October 2, 2020 Certification of Plaintiff's daughter, Moxuda Vyas, refers to "ongoing" conversations related to Plaintiff's and Decedent's "partnership disagreement"; this does not create a dispute as to whether the alleged breach ever occurred. Rawal Decl., Ex. M ¶ 23, Dkt. No. 54-16. The Certification of Plaintiff's wife, Chandrika Rawal, which is also dated October 2, 2020, states, "[n]o one . . . ever suggested that there was no partnership between [Decedent] and [Plaintiff]," and avers that Decedent's widow Ansuya "acknowledged the partnership." Rawal Decl., Ex. N ¶ 12, Dkt. No. 54-17. Again, whether or not there was discussion of Decedent and Plaintiff ceasing to be partners has no bearing on whether Decedent breached the Agreements. The vague statement that Ansuya acknowledged the partnership does not undermine Plaintiff's testimony that Decedent breached the Agreements, that Plaintiff knew of the breach in 1985, and that Plaintiff responded by hiring counsel. The Certification of Jitesh Mehta notes that Plaintiff and Decedent "had a business relationship and a dispute related thereto," but does not reflect on the alleged breach. *See* Rawal Decl., Ex. O ¶ 7, Dkt. No. 54-18. Similarly, the letter from Bharati Purohit does not comment on any breach, but simply notes that Plaintiff and Decedent began EMP-NY "in partnership . . . sometime in the early to mid 1980s" and that Plaintiff visited the United States in 1985. *See* Rawal Decl., Ex. L, Dkt. No. 54-15.

claim that he was not locked out of the company, nor does he direct the Court to evidence to the contrary. Again, Plaintiff cannot create a dispute of material fact by submitting a declaration that undermines his own prior deposition testimony. *See Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014).

Plaintiff also directs the Court to a letter from Plaintiff to Decedent, dated April 12, 2017. *See* Opp. at 10; Rawal Decl., Ex. K, Dkt. No. 54-14. In the letter, Plaintiff acknowledges verbal offers, "made on [Decedent's] behalf" through family members, "towards [Plaintiff's] partnership share." Rawal Decl., Ex. K. Plaintiff seems to reason that this letter shows Decedent's willingness to buy Plaintiff's share as recently as 2017, which demonstrates that Decedent did not earlier breach the Agreements by denying Plaintiff's interest. However, Decedent "never replied" to the 2017 letter. Rawal Dep. at 285:2-4. Further, Plaintiff submits no evidence in which Decedent himself articulates an offer. Accordingly, the April 12, 2017 letter does not show Decedent "never once denied" Plaintiff's ownership interest. *See, e.g.*, *Nelson v. Frawley*, 186 F. Supp. 66, 68 (S.D.N.Y. 1960) (plaintiff's letter to defendant that referred to stock participation as part of plaintiff's compensation "would be inadmissible . . . to prove the existence of the contract as alleged by plaintiff because of its self-serving nature"); *Steber v. Palm Knitting Co.*, 201 N.Y.S. 478, 479 (App. Div. 1923) ("It is well recognized that a letter written by one party to another, not answered, is not competent evidence in the case as against the party to whom it was written, but is only a self-serving declaration, by which the other parties cannot in any way be bound.").

In sum, Plaintiff offers no evidence to contradict his own testimony that, as of 1985, the partnership to be created under the Agreements did not exist and that Decedent locked Plaintiff out of the business by 1986. The record thus supports Defendants' position that Decedent's

alleged breach of his agreement to be business partners with Plaintiff occurred more than six years before May 17, 2018, when Plaintiff commenced this action. The Court further notes that, if it were to accept Plaintiff's argument that Decedent did not breach, Plaintiff's breach of contract claim would simply fail; as discussed directly below, Plaintiff cannot, at this late stage, substitute the Estate's actions for Decedent's, as the cause of the alleged breach.

## 2. Plaintiff is Estopped from Arguing Breach by Estate, Not Decedent

As Defendants contend, Plaintiff is estopped from arguing that Decedent did not commit the alleged breach. *See* Reply at 1-2. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 277 n.8 (2000)). Three factors inform a court's decision to apply the doctrine: "first, whether a party's current position is 'clearly inconsistent with its earlier position'; second, whether a court 'accept[ed] that party's earlier position'; and third, whether 'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 363-64 (S.D.N.Y. 2011) (quoting *New Hampshire*, 532 U.S. at 751-52). The Second Circuit has limited the application of judicial estoppel "to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010); *see also New Hampshire*, 532 U.S. at 743 ("The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."). That is, "judicial estoppel may only apply where the earlier

tribunal accepted the accuracy of the litigant's statements." *In re Adelphia Recovery Tr.*, 634 F.3d 678, 696 (2d Cir. 2011).

First, Plaintiff's Opposition asserts that Decedent "never once denied that Plaintiff had" or would be entitled to an ownership interest, and that Plaintiff's claim for breach arose only when the Estate "failed to recognize Plaintiff's ownership interest in the business." Opp. at 10. This position is clearly inconsistent with Plaintiff's earlier claims. The Complaint specifically alleges that "[Decedent] breached his agreements with Plaintiff that Plaintiff was at first a 50% owner, and then a 49% owner." Compl. ¶ 33. The Complaint further claims that Plaintiff suffered damages as a "direct and proximate result of [Decedent's] breach." *Id.* ¶ 35. Plaintiff directly contradicts himself by arguing that the breach arose from the Estate's actions and not from Decedent's.

Second, the Court previously accepted Plaintiff's earlier position, that alleged actions by Decedent amounted to a breach of contract, at the Motion to Dismiss phase of this litigation. *See* Mot. Dismiss Bench Ruling Tr. at 4 ("With respect to whether or not it plausibly alleges a breach of contract claim, it has all the elements."). Judge Bianco found that the statute of frauds and statute of limitations issues Defendants advanced did not, at that stage, warrant dismissal, and denied the Motion to Dismiss as it applied to Plaintiff's claim for breach of contract against the Estate. *See id.* at 4-7; Order.

Third, Plaintiff would derive an unfair advantage and impose an unfair detriment on Defendants, were it allowed to proceed with its inconsistent argument. To permit Plaintiff to argue that the Estate, and not Decedent, committed the breach now, in the face of evidence that breach by the Decedent occurred in the mid-1980s, would afford Plaintiff "two bites at the apple." *See Cabral v. City of N.Y.*, No. 12 Civ. 4659(LGS), 2015 WL 4750675, at *5 (S.D.N.Y.

Aug. 11, 2015).  Further, Plaintiff's new position comes after the close of discovery and after

Defendants filed their Motion for Summary Judgment.  Up until this point, Defendants have

proceeded based on the claim that Decedent breached; it would impose an unfair detriment on

Defendants to allow Plaintiff, at this late stage in the case, to assert that Decedent "never once

denied" Plaintiff's ownership interest and that it was instead the Estate that breached.  *See* Opp.

at 10.

Given the foregoing, Plaintiff is barred from arguing that the alleged breach arose from

the actions of the Estate and not Decedent.  *See Intellivision*, 784 F. Supp. 2d at 362-366

(plaintiffs estopped from arguing, at summary judgment, that individual plaintiffs owned and

assigned rights in patent applications, where plaintiffs argued in complaints and at motion to

dismiss phase that rights were owned and assigned by joint venture entity).

### 3.  The Continuing Wrong Doctrine Does Not Apply

In their Motion for Summary Judgment, Defendants assert that the "theory of a

continuing wrong . . . based on an alleged failure to make distributions . . . is misguided."  Mot.

at 10.  Defendants reason that a duty to make distributions on the part of Decedent is predicated

upon Plaintiff's ownership of the business.  *Id.*  However, according to Defendants, Plaintiff has

alleged a "**one-time**" breach based on "Decedent's failure to register Plaintiff as a stockowner or

to otherwise formalize his ownership interest."  *Id.* (emphasis in original).  Without a claim to

ownership, Defendants aver, Plaintiff "cannot state any viable claim for continuing

distributions."  *Id.*  In response, Plaintiff concedes that Decedent's "failure to provide an

accounting or to give a distribution were breaches of his fiduciary duty . . . but was [*sic*] not a

breach [of] his agreement to be Plaintiff's partner."  Opp. at 11.  Further, he contends,

> [t]o the extent that the Court determines that Plaintiff's claims of breach of
> fiduciary duty are sufficient to start the statute of limitations on his claim of

breach of the agreement to be partners . . . [Decedent's] breaches of the parties' partnership agreement were *continuous* through the time of his death in 2018.

*Id.* (emphasis in original).

As a preliminary matter, Judge Bianco, in dismissing Plaintiff's accounting claim, found that "there is no fiduciary relationship that's alleged" and that "[t]his is a commercial transaction that's alleged here." Mot. Dismiss Bench Ruling Tr. at 11. Accordingly, the Court declines to consider alleged acts that Plaintiff characterizes as breaches of fiduciary duty, as those acts relate to the timeliness of the breach of contract claim.[5] Further, Plaintiff does not address Defendants' argument that Decedent's failure to formalize Plaintiff's interest in the business constitutes a one-time breach. For the reasons below, the Court agrees with Defendants that this alleged failure, as claimed in the Complaint and addressed in Plaintiff's deposition, amounts to a one-time breach to which the continuing wrong doctrine does not apply. *See* Compl. ¶¶ 25, 51; Rawal Dep. at 158:3-160:2.

The continuing wrong doctrine "is an exception to the general rule that the statute of limitations runs from the time of the breach though no damage occurs until later." *Henry v. Bank of America*, 48 N.Y.S.3d 67, 69 (App. Div. 2017) (internal quotation marks, citation omitted). It is "usually employed where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act." *Selkirk v. State*, 671 N.Y.S.2d 824, 825 (App. Div. 1998). The doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct." *Id.* "In contract actions, the doctrine is applied to extend the statute of limitations when the contract imposes a continuing duty on the breaching party. Thus, where a plaintiff asserts a single breach—with

---

[5] Even if Plaintiff had alleged a fiduciary duty, Plaintiff cites no cases in which a party's breach of fiduciary duty triggers the continuing wrong doctrine as to a breach of contract claim.

14

damages increasing as the breach continued—the continuing wrong theory does not apply." *Henry*, 48 N.Y.S.3d at 70 (internal citations omitted).

According to Plaintiff, performance of the agreement that Plaintiff and Decedent were to be 50-50 owners "was supposed to start from day one," "[w]hen the company started" in 1983. Rawal Dep. at 154:12-25. Likewise, the 1985 agreement for Plaintiff and Decedent to be 49-51 owners was to be performed "immediately." *Id.* 158:3-16. Decedent was responsible for finalizing this agreement. *See id.* at 155:14-156:3; 157:14-17. Accordingly, as Defendants assert, any failure by Decedent to formalize Plaintiff's ownership interest would amount to a "**one-time**" breach of contract. *See* Mot. at 10 (emphasis in original); *see also LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 442 (S.D.N.Y. 2018) (breach occurred "at that time" plaintiff failed to transfer stock, where defendant/counterclaimant was to become a shareholder of plaintiff "immediately after the parties modified their contract"); *Lia v. Saporito*, 909 F. Supp. 2d 149, 163 (E.D.N.Y. 2012) ("purported breaches of the [agreements] occurred when defendants failed to execute the documents within a reasonable time of the [plaintiff] parties' initial demands therefor. Moreover, the limitations period was not reset every time the [plaintiff] parties reiterated their demands that defendants execute the documents purportedly required under the [agreements]").

The authority cited by Plaintiff is not persuasive, given the facts alleged. The court in *Tsui v. Chou* applied the continuing wrong doctrine because the defendants, "*each year*, refused to offer up the unsold Units for sale and/or subsequently amend the Plan to represent their Unit ownership," in violation of an ongoing obligation under the contract. *Tsui v. Chou*, No. 652840/2013, 2020 WL 3578451, at *4 (N.Y Sup. Ct. July 1, 2020) (emphasis in original). Similarly, *Garron v. Bristol House, Inc.* and *Meadowbrook Farms Homeowners Association,*

*Inc. v. JZG Resources, Inc.* involved continuing contractual obligations. *See Garron v. Bristol House, Inc.*, 79 N.Y.S.3d 265, 267 (App. Div. 2018) (ongoing "contractual duty to keep the building in good repair and to provide habitable premises"); *Meadowbrook Farms Homeowners Ass'n, Inc. v. JZG Res., Inc.*, 963 N.Y.S.2d 300, 302 (App. Div. 2013) ("obligation to pay annual assessments to the plaintiff").[6] Here, Plaintiff has indicated that the Agreements did not create an obligation to distribute profits. Plaintiff does not identify any ongoing contractual obligation, under either the 50-50 Agreement or the 49-51 Agreement.

Finally, Plaintiff seems to suggest, by briefly citing to *General Stencils v. Chiappa*, 18 N.Y.2d 125, 128-29 (1966), that Defendants should be equitably estopped from raising a statute of limitations defense. *See* Opp. at 13-14. The *General Stencils* Court explained that a party may be barred from asserting the "affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." *General Stencils*, 18 N.Y.2d at 128. There, the defendant "carefully concealed" her theft. *Id.* In the instant matter, however, the record indicates that Plaintiff became aware in 1985, while the 50-50 Agreement was governing, that Decedent did not include Plaintiff's name on EMP-NY accounts. *See* Rawal Dep. 65:2-66:11. After Plaintiff and Decedent orally entered the 49-51 Agreement, also in 1985, Plaintiff was aware Decedent did not formalize the agreement; Plaintiff "kept on ringing" Decedent because Plaintiff did not receive a formal, written draft of the agreement for his

_____

[6] As to *Lebedev v. Blavatnik*, the Appellate Division there found that the plaintiff's breach of contract, breach of joint venture, and breach of fiduciary duty claims accrued at the time defendants breached their obligation under the governing agreement to pay plaintiff his share of profits generated by the joint venture. *Lebedev v. Blavatnik*, 144 A.D.3d 24, 26, 28-29 (App. Div. 2016). This breach allegedly occurred in 2013, and thus the action, which plaintiff commenced in 2014, was brought within the relevant statutes of limitations. *Id.* at 27-29. The Appellate Division did not apply the continuing wrong doctrine.

signature. *See id.* at 69:3-70:5. Decedent "never responded." *See id.* at 69:22-24. Further, Plaintiff testified that "obviously [Decedent] breached the [49-51 Agreement] from day one" and confirmed that he became aware of this breach in 1985. *See* Rawal Dep. at 158:23-159:9. Accordingly, *General Staples* is inapposite; the record sufficiently demonstrates that Plaintiff has been aware of the alleged breach of contract since the 1980s.

Given the foregoing, the continuing wrong doctrine does not apply to the breach of contract claim.

### ii. Unjust Enrichment and Quantum Meruit

The Complaint alleges that "Plaintiff provided initial capital, industry knowledge, industry connections and other valuable services to EMP, under the premise that he was a 50% (later 49%) owner" of the business. Compl. ¶ 45. In exchange for these contributions, which allegedly include $8,060.00 of start-up capital, Plaintiff claims to have received a $1,000.00 dividend and another payment of $1,000.00, in or around 1985. *See id.* ¶¶ 19, 46; Opp. at 2, 6. Plaintiff thus seeks damages under a theory of unjust enrichment. *See* Compl. ¶¶ 43-48. Based on similar allegations, that Plaintiff "provided services . . . [and] capital contributions" yet "was never adequately compensated for such services," Plaintiff also seeks damages in quantum meruit. *See id.* ¶¶ 54-57. Per New York law, a Court "may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

Plaintiff's quasi-contract claims are subject to, at most, a six-year statute of limitations. *See* N.Y. C.P.L.R. § 213(2).[7] "The statute of limitations for unjust enrichment begins to run

---

[7] In New York, the statute of limitations for an unjust enrichment claim usually varies based upon the remedy sought. "The limitations period is six years where plaintiff seeks an equitable remedy, but three years where plaintiff seeks monetary damages." *Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 596 (S.D.N.Y. 2018); *see also Lia*, 909 F. Supp. 2d at 167. Here, Plaintiff seeks damages. *See*

when a defendant accepts the benefits bestowed upon him . . . or upon occurrence of the wrongful act giving rise to the duty of restitution." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 558 F. Supp. 2d 378, 409 (E.D.N.Y. 2008). "The statute of limitations 'begins to run for a quantum meruit claim when the final service has been performed.'" *Scott v. Rosenthal*, 2001 WL 968992, at *8 (quoting *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F. Supp. 714, 722 (S.D.N.Y. 1986)), *aff'd* 53 F. App'x 137 (2d Cir. 2002).

Defendants contend that Plaintiff's claims for unjust enrichment and quantum meruit are barred by the statute of limitations. Mot. at 9-10. Again, Defendants support their argument with citations to Plaintiff's own testimony. *See id.* at 9. At his deposition, Plaintiff indicated that he invested no money into EMP-NY after 1985. Rawal Dep. at 41:17-42:2. Further, Plaintiff confirmed that he made "no fresh investment" of money into Engineering MP after May 1, 2012, that is, within six years of commencing this action. *Id.* at 256:23-257:12. Nor did he contribute property to the business. *Id.* at 216:13-16. Plaintiff testified that he provided services in that he assisted with Decedent's immigration to the United States and training, and helped Decedent navigate issues with customers throughout the 1980s. *Id.* at 172:23-174:2. However, Plaintiff also indicated that he did not provide Engineering MP with advice regarding customers after 1990, *Id.* at 173:13-174:4, and that he did not assist Plaintiff with setting up the business

---

Compl. However, as Plaintiff indicates, some courts have applied a six-year limitations period to unjust enrichment claims pled in the alternative to breach of contract claims. *See* Opp. at 14 n.3 (citing *Maya NY, LLC v. Hagler*, 965 N.Y.S.2d 475, 477 (App. Div. 2013)); *see also City of Almaty v. Sater*, 19-cv-2645 (AJN), 2020 WL 7027566, at *9 (discussing split in limitations period applied by Appellate Division, where claim for unjust enrichment is coupled with claim for breach of contract). As will be discussed, in the instant matter, Plaintiff's unjust enrichment claim is time-barred under either statute of limitations. Quantum meruit claims are subject to a six-year limitations period. *See, e.g.*, *Gelfman Int'l Enters. v. Miami Sun Int'l Corp.*, No. 05-CV-3826 (CPS)(RML), 2009 WL 2242331, at *5 n.15 (E.D.N.Y. July 27, 2009) ("New York law provides a six year statute of limitations for . . . quantum meruit . . . claims") (citing N.Y. C.P.L.R. § 213).

after 1990.[8]  *Id.* at 130:14-131:12.  Plaintiff also identified "'85" or "'88" as the last time he provided Decedent with business leads.  *Id.* at 51:14-52:16.  Plaintiff further explained that he promoted the United States business at annual conferences that he attended up until "'98 or 2000 approximately."  *Id.* at 52:24-54:6.  While Plaintiff states he "never [said] anything ill about the company" as recently as "2013, 2015, 2014" and suggests that he spoke highly of the company, he was unable to identify a single occasion on which he promoted EMP-NY or Engineering MP after the year 2000.  *See id.* at 55:20-56:13.  Finally, Plaintiff indicates that he did not provide any services to Decedent personally within the ten years leading up to his June 5, 2019 deposition.  *Id.* at 135:19-136:10.

Plaintiff's Opposition does not directly address Defendants' argument.  Rather, in a footnote, Plaintiff states that the same analysis he applies in support of the timeliness of his breach of contract claim "holds true for Plaintiff's quasi-contract claims for unjust enrichment and quantum meruit."  Opp. at 14 n.3.  This analysis, however, does not reference the dates that Plaintiff made contributions to or rendered services for Decedent, EMP-NY, or Engineering MP, details that are important to determining the timeliness of Plaintiff's quasi-contract claims.  Also unpersuasive is Plaintiff's Declaration, which states, "I maintained the reputation of the EMP brand, maintained the brand's relationship with [MMP], continued to support EMP-NY with MMP, mentioned EMP-NY to potential customers, and invited EMP-NY to participate in networking events."  Rawal Decl. ¶ 37.  The Declaration does not describe any specific instances in which Plaintiff provided services for EMP-NY.  Nor is it clear whether any of the general promotional activities listed occurred within the limitations period.  For example, Plaintiff

---

[8] The Court notes that Plaintiff suggests he "[i]ndirectly" helped set up the business after 1990 insofar as Engineering MP "is the continuation of" EMP-NY, and he had earlier assisted EMP-NY.  *See id.* at 131:3-17.  This does not demonstrate that Plaintiff rendered services related to the establishment of Engineering MP after 1990.

testified that MMP was sold before the year 2000; accordingly, Plaintiff cannot establish the timeliness of his claims by suggesting he provided EMP-NY services by way of supporting the business' relationship with MMP. *See* Rawal Dep. at 53:21-54:6, 118:18-21, 183:12-14. Even if the Declaration did identify specific services performed by Plaintiff, the Court would have to address such claims, insofar as they undermined Plaintiff's testimony, with skepticism. To reiterate, Plaintiff cannot create a dispute of material fact by offering an affidavit to contradict his own testimony. *Crawford*, 758 F.3d at 482.

Plaintiff does not introduce evidence to contradict the testimony described above, or to otherwise show with specificity that Plaintiff contributed money or services within the six years preceding the commencement of this action. There is thus no dispute of material fact concerning the untimeliness of Plaintiff's unjust enrichment and quantum meruit claims, and the Court grants Defendants' Motion for Summary Judgment as it applies to those claims.

### b. Plaintiff's Motion to Amend

Plaintiff's Motion to Amend seeks to "add an allegation of fraud and update the breach of contract cause of action" in light of discovery. *See* Mot. Am. at 1. The proposed Amended Complaint also adds Peresh Dave, Reena Dave, and Ansuya Dave as defendants. *See id.* Defendants contend that the proposed amendment is futile because Plaintiff fails to state a cause of action for fraud, the proposed fraud claim lacks the requisite specificity, the proposed fraud claim remains duplicative of the breach of contract claim, and the proposed fraud claim is time-barred. Opp. Am. at 9-16. The Court finds that the proposed amendments are futile.

Without addressing each of Defendants' arguments, the Court agrees that the proposed fraud claim fails, at the very least, for lack of specificity. Federal Rule of Civil Procedure 9(b) requires that a plaintiff alleging fraud "state with particularity the circumstances constituting

fraud . . . ." Fed. R. Civ. P. 9(b). To meet this heightened pleading standard, a plaintiff must:

"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements were

fraudulent." *Nakahata v. New York Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d

Cir. 2013) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Where

the alleged fraud consists of an omission, and the plaintiff cannot specify the time and place

because no act occurred, "the complaint must still allege: (1) what the omissions were; (2) the

person responsible for the failure to disclose; (3) the context of the omissions and the manner in

which they misled the plaintiff; and (4) what defendant obtained through the fraud." *Watts v.

Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 351 (E.D.N.Y. 2008) (quoting *Manhattan

Motorcars, Inc. v. Automobili Lamborghini, S.p.A., Inc.*, 244 F.R.D. 204, 213 n.58 (S.D.N.Y.

2007)).

Plaintiff's allegations in support of his proposed fraud claim do not meet the pleading

standard. For example, Plaintiff alleges, "[Decedent] made a series of intentional

misrepresentations" in 1983 "and thereafter made further misrepresentations," Smith

Certification, Ex. A ¶ 49, Dkt. No. 30-5. This does not explain the substance of the alleged

misrepresentations, where the statements were made, or the media by which they were

communicated. *See United Republic Ins. Co. v. Chase Manhattan Bank*, 168 F. Supp. 2d 8, 17

(N.D.N.Y. 2001) (fraud claim does not meet specificity requirement where, among other reasons,

plaintiff fails to "specify[] the content of a misrepresentation," "fails to name a specific

document, phone call, or utterance . . . that could be construed as a misrepresentation," and "fails

to specify where" the misrepresentation was made). Further, "1983" does not sufficiently

suggest when the misrepresentations were made, nor does "thereafter," a period encompassing

more than thirty years. *See Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 248 (S.D.N.Y. 2011) (fraud claim did not meet specificity requirement where it failed to "narrow the time frame within which the representations were made to a period shorter than 'during 2001'").

While statements like "[Decedent] falsely claimed he did not have money to pay Plaintiff whenever Plaintiff sought a buyout," Smith Certification, Ex. A ¶ 55, and "[Decedent] continued to send false messages that he would pay and to make false offers to buy Plaintiff out," *Id.* ¶ 56, might adequately describe the content of the alleged misrepresentations, they lack information concerning when they were made or by what media they were conveyed. Plaintiff also alleges omissions on Decedent's part, such as, "[Decedent] intentionally changed the name and omitted informing Plaintiff thereof." *Id.* ¶ 51. Such claims, too, are insufficiently specific. While Plaintiff posits, in a conclusory fashion, that Decedent changed the entity's name to "defraud[] Plaintiff out of his ownership interest," *Id.*, Plaintiff does not explain how Decedent's failure to notify Plaintiff of the name change misled Plaintiff. *See Houraney v. Burton & Assocs., P.C.*, 701 F. Supp. 2d 258, 262 (E.D.N.Y. 2010) (proposed fraud claim fails to meet heightened specificity standard where plaintiff "does not state how . . . omission misled him").

Similarly lacking in specificity are Plaintiff's allegations concerning "Defendants," which include: "Defendants created and/or filed fraudulent corporate documents regarding ownership of [Engineering MP]" to "facilitate" fraud, Smith Certification, Ex. A ¶ 25; "in 1988, Defendants made further intentional material misrepresentations and omissions by creating a corporation for [Engineering MP] without including or informing Plaintiff," *Id.* ¶ 52; "Defendants created false documentation regarding the ownership of [Engineering MP]," *Id.* ¶ 53; "Defendants continued to make these intentional misrepresentations and omissions [concerning Decedent's willingness to pay Plaintiff or buy Plaintiff out] through the present date," *Id.* ¶ 57. Again, Plaintiff does not

indicate when or where the misrepresentations were made, stating a time no more specific than "1988." Further, these allegations concerning Defendants do not specify who among Engineering MP, the Estate, Peresh Dave, Reena Dave, and Ansuya Dave made the claimed misrepresentations or was responsible for the alleged failure to disclose. *See, e.g.*, *Eaves*, 785 F. Supp. 2d at 248 (noting "Plaintiffs fail to identify who at [defendant corporation] made the representations," in explaining why fraud claim fails for lack of specificity); *Odyssey Re (London) v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 294 (S.D.N.Y. 2000) ("it is insufficient to make such an allegation [of failure to disclose information] against defendants collectively").

Plaintiff suggests that his pleading sufficiently puts Defendants "on notice of the allegations against them." Reply Am. at 10-11. However, as courts in the Second Circuit have often indicated, fraud claims require more than notice pleading. *See, e.g.*, *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 184 (E.D.N.Y. 2017) (comparing "permissive pleading standard of Rule 8" to the "heightened pleading requirements imposed by Rule 9(b)," which apply when a claim sounds in fraud; *Johnson v. The Univ. of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 264 (W.D.N.Y. 2010) ("With respect to the specificity of the stated claims, the Federal Rules of Civil Procedure generally demand only 'notice' pleading . . . . However, where, as here, the complaint sounds in fraud, a more rigorous standard is applied."); *Miller v. Holtzbrinck Publishers, LLC*, No. 08 Civ. 3508(HB), 2009 WL 528620, at *4 (S.D.N.Y. Mar. 3, 2009) (while "Rules 8(a) and 9(b) must be read in conjunction with one another, the Rules are distinct, and the heightened pleading standard of Rule 9(b) applies with force to all claims sounding in fraud") (citing *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1997)). Clearly, Plaintiff's fraud claim does not meet the more rigorous standard of Rule 9(b). Those allegations concerning

misrepresentations, some of which were allegedly made decades ago by an individual who is now deceased, do not mention the content or timing of the misrepresentations or the media by which these misrepresentations were made. Likewise deficient, for reasons discussed in the preceding paragraphs, is the specificity of the claimed omissions.[9] Plaintiff's Reply further argues that his failure to plead the date of "the actual forgery or when, if ever, such ownership interest [of Reena or Ansuya Dave] was effectuated" is not fatal to the fraud claim. *Id.* at 12.[10] Whether or not this is the case, Plaintiff does not with requisite specificity allege misrepresentations made to, or facts concealed from, Plaintiff that concern the forgery.[11]

For all of these reasons, Plaintiff's proposed fraud cause of action is futile.

---

[9] In arguing that the allegations in the proposed fraud claim are satisfactorily specific, Plaintiff cites several New York State Court cases. *See* Reply Am. at 11-12. The Court is not persuaded. In *Pludeman v. Northern Leasing Systems, Inc.*, 10 N.Y.3d 486, 493 (2008), the Court of Appeals of New York excused the plaintiffs' failure to allege "specific details of each individual defendant's conduct." In finding "an inference of fraud against the [defendant] corporate officers in their individual capacity," the *Pludeman* Court took into account the scope of the alleged fraud, described as a "nationwide scheme," and noted that the unrelated plaintiffs small business owners all "registered parallel complaints." *Id.* The Court of Appeals took considered a common "deceptive lease form and the systematic failure by the salespeople to provide each lessee a copy of the lease at the time of its execution." *Id.* In the instant matter, Plaintiff has not adequately demonstrated a fraud scheme by alleging, for example, general misrepresentations, made at unspecified times and through unspecified media, and omissions, for which the misleading effect on Plaintiff was not made clear. For similar reasons, *Board of Managers of 411 East 53rd Street Condominium v. Dylan Carpet, Inc.*, 582 N.YS.2d 1022, 1023-24 (App. Div. 1992), is inapposite; there, the Court held, "that the fraud allegations do not identify and distinguish between the two individual defendants is of no consequence since the complaint as a whole, adequately alleges a scheme involving both defendants." Additionally, the quotation that Plaintiff attributes to *Progressive Management of NY v. Galaxy Energy LLC* does not appear in the Opinion. *See Progressive Mgmt. of NY v. Galaxy Energy LLC*, 36 N.Y.S.3d 409 (table). Further, the court there dismissed the fraud claim, as it alleged "no indication of any actual misrepresentations, who made them or when they were purportedly made." *Id.* Finally, *Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606 (1979) and *Beller v. William Penn Life Insurance Co. of New York*, 778 N.Y.S.2d 82 (App. Div. 2004) do not involve fraud claims.

[10] The Court notes that, contrary to Defendant's statement in the Reply, which suggests the Amended Complaint alleges Defendants forged documents to add Reena Dave *and* Ansuya Dave as owners, the Amended Complaint Plaintiff submits alleges that documents were forged to add only Reena Dave. *See* Smith Certification, Ex. A ¶¶ 26, 53.

[11] To the extent that Plaintiff seeks to allege fraud based on the forgery alone, such a claim fails. In New York, "forgery is a crime and therefore does not give rise to an independent civil cause of action." *Nirvana Int'l, Inc. v. ADT Sec. Servs., Inc.*, 525 F. App'x 12, 15 (2d Cir. 2013) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)).

As to the revised contract claim, the Court has already discussed Plaintiff's testimony that he learned, in 1985, that his partnership with Decedent did not exist.  *See* Rawal Dep. at 309:24-310:7.  It is thus clear that Plaintiff knew of the breach and failed to timely bring his claim. Plaintiff's proposed amendments to the breach of contract claim, which suggest Decedent breached by "changing the name and corporate structure of [Engineering MP]," do not make the claim timely.  Smith Certification, Ex. A ¶ 39.

Finally, with his Motion to Amend, Plaintiff requests removal of the bond previously ordered by Judge Bianco.  *See* Mot. Am. at 9-10; Order; Mot. Dismiss Bench Ruling Tr. at 14-19 (ordering $15,000 bond be posted and explaining the purpose of the bond is to give Defendants "the ability to recover the cost," not for sanctions).  Plaintiff's request is predicated on his belief that "the merits of the case have changed" as a result of "the new facts uncovered and the allegations in the Amended Complaint."  Mot. At. At 9-10.  As discussed, the Court finds the Amended Complaint futile.  The newly uncovered facts—principally, that "Reena Dave" was listed as an owner of Engineering MP in 1988, though she did not marry Decedent's son and take the last name Dave until 1992—have no great bearing on the merits of Plaintiff's case. Accordingly, the Court declines to release the bond.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED

and Plaintiff's Motion to Amend is DENIED.

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
         May 24, 2021